# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

WILLIAM HENRY HARRISON,

    *Plaintiff*,

v.

FEDERAL BUREAU OF PRISONS, *et al.*,

    *Defendants.*

Civil Action No. 16-819 (RDM)

## MEMORANDUM OPINION

This matter is before the Court on the individual defendants' motion to dismiss, or, in the alternative, to transfer venue, Dkt. 23. Plaintiff William Henry Harrison, proceeding *pro se*, is suing the Federal Bureau of Prisons ("BOP") and four employees of the Petersburg Federal Correctional Complex ("Petersburg FCC"), where he was formerly incarcerated, for wrongfully classifying him as a sex offender in his BOP file. Dkt. 1 at 3, 10–11 (Compl. ¶¶ 2–7, 34–39). Previously, the Court dismissed all of Plaintiff's claims except for his First Amendment retaliation claim against the individual defendants. *See* Dkt. 13 at 17; Dkt. 20 at 8, 18. The Court later permitted Plaintiff to amend his complaint to assert a FOIA claim against the BOP. *See* Minute Order (Oct. 19, 2018); Dkt 38 (Amended Compl.).

Because none of the individual defendants—subject to suit in their personal capacities—reside in the District of Columbia, and because the events giving rise to Plaintiff's First Amendment claim occurred at the Petersburg FCC in Virginia, the Court will **GRANT** the motion to transfer the case to the U.S. District Court for the Eastern District of Virginia. The Court will, however, sever Plaintiff's FOIA claim against the BOP and retain jurisdiction over that claim.

# I. BACKGROUND

The facts of this case are set out in the Court's prior opinion. *See* Dkt. 13 at 2–7. To summarize, Plaintiff served two separate terms of incarceration in federal prison. *Id.* at 1. In 2008, near the end of his first term of incarceration, a district court directed the BOP to disregard the "misleading" statements in Plaintiff's file, which had resulted in the BOP incorrectly designating him as a sex offender and disqualifying him from minimum security housing. *Id.* When Plaintiff was re-incarcerated in 2016, however, the BOP continued to treat him as a sex offender. *Id.* Plaintiff pursued administrative remedies and eventually had his sex offender designation removed, but it was too late to transfer to a minimum-security prison before his release. *Id.*

In May 2006, Plaintiff brought suit against the BOP and four employees at the Petersburg FCC: the warden, Eric Wilson; the associate warden, Allia Lewis; his unit manager, Jennifer Vukelich; and his case manager, Lisa King, seeking "damages under the Privacy Act, the U.S. Constitution, and state libel law." Dkt. 13 at 7. He also "[sought] an order under the Administrative Procedure Act ("APA") . . . compelling the BOP to allow him access to his prisoner records." *Id.* The BOP and the individual defendants—appearing solely in their official capacities—filed a motion to dismiss and for summary judgment, Dkt. 9, which the Court granted in part and denied in part, Dkt. 13. The Court dismissed Plaintiff's Privacy Act, APA, and constitutional claims, but declined to dismiss his common law libel claim because the Department of Justice had not filed a *Westfall* certification. Dkt. 13 at 16. Defendants then filed a renewed motion to dismiss Plaintiff's common law libel claim after filing its *Westfall* certification, Dkt. 14, and Plaintiff moved for reconsideration of the Court's order dismissing his federal law claims, Dkt. 16. Upon considering the government's *Westfall* certification, the Court

granted Defendants' motion to dismiss with respect to Plaintiff's common law libel claims. Dkt. 20 at 6. But, at the same time, the Court reconsidered its holding on Plaintiff's First Amendment retaliation claims against the individual defendants, concluding that, "[w]hether [Plaintiff's] rights were violated, . . . remains in dispute." *Id.* at 18. Finally, the Court held that, although Plaintiff failed to plead a FOIA claim against the BOP in his complaint, "[he] [could] . . . seek leave to amend . . . under Rule 15(a)(2) to allege a FOIA claim relating to [his BOP records]." *Id.* at 7–8.

At that point, Defendants filed a motion to dismiss, or, in the alternative, to transfer venue, arguing that "only [the] individually-named defendants" remained in the case and that this Court lacks venue over the claims against those defendants. Dkt. 23 at 7. Before the Court could rule on that motion, however, Plaintiff sought leave to amend his complaint to add a FOIA claim against the BOP, Dkt. 35, which the Court granted, *see* Minute Order (Oct. 19, 2018). Plaintiff then filed his amended complaint, alleging that the BOP unlawfully withheld the records he requested in FOIA claim "No. 2016-0346." Dkt. 38 at 1–2 (Amended Compl. ¶¶ 1, 5–7). He failed, however, to include or otherwise to incorporate his First Amendment retaliation claim against the individual defendants in his amended pleading. *See id.* (Amended Compl.). Defendants, in turn, timely answered Plaintiff's amended complaint, but only addressed his FOIA claim. Dkt. 39.

In light of the confusion regarding the operative claims for relief and the status of Defendants' motion to dismiss or transfer venue, the Court scheduled a status conference to discuss further proceedings in the case. Minute Order (Nov. 8, 2018). At the conference, Plaintiff indicated that he did not intend to abandon his personal-capacity claims against the individual defendants and that he intended merely to add a new claim against the BOP under

FOIA. *See* Dec. 11, 2018 Hrg. Tr. (Rough at 2). Because Defendants had moved, among other things, to transfer Plaintiff's claims against the individual defendants to the Eastern District of Virginia, the Court inquired whether that request was opposed and, if not, whether it would be appropriate to transfer the individual claims while maintaining jurisdiction over Plaintiff's FOIA claim. *Id.* (Rough at 5). Both parties agreed to transfer the individual claims to Virginia. *Id.* (Rough at 5, 7). The Court then ordered the parties to file a joint status report regarding Plaintiff's FOIA claim in thirty days, Minute Entry (Dec. 11, 2018), and ordered Defendants to file a supplemental brief "inform[ing] the Court . . . why the claims against individual defendants should be transferred to the U.S. District Court for the Eastern District of Virginia," Minute Order (Dec. 12, 2018).[1]

## II. ANALYSIS

Federal law requires that plaintiffs bring suit "in the proper venue" to "ensure[ ] that a district with some interest in the dispute or nexus to the parties adjudicates the plaintiff's claims." *Hamilton v. JPMorgan Chase Bank*, 118 F. Supp. 3d 328, 333 (D.D.C. 2015). Venue is proper in a district (1) where any defendant resides (if all defendants are residents of the same state); (2) where the events giving rise to the suit occurred; or (3) if "there is no district in which an action may otherwise be brought," in any district in which a defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(b). "Where a case involves more than one cause of action, venue must be proper as to each claim." *Relf v. Gasch*, 511 F.2d 804, 807 n.12 (D.C. Cir. 1975); *see also* 14D Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3807 (4th

---

[1] In light of the fact that Defendants maintain that this Court lacks venue to adjudicate Plaintiff's claims against the individual defendants and Planitiff's non-opposition to transfer, the Court need not, and will not, reach Defendants' argument that the case should be dismissed for failure to state a claim. *See* Dkt. 23 at 8 (arguing that Plaintiff's constitutional claims should be dismissed because *Bivens* does not apply in this context).

ed. 2018) (hereinafter "Wright & Miller"). Venue is available pursuant to the "fallback" provision contained in § 1391(b)(3), moreover, "only if there is no federal district that will satisfy either the residential venue [§ 1391(b)(1)] or transactional venue [§ 1391(b)(2)] provisions." Wright & Miller, Federal Practice and Procedure § 3806.1 (emphasis omitted).

Pursuant to Federal Rule of Civil Procedure 12(b)(3), "a defendant may, at the lawsuit's outset, test whether the plaintiff 'has brought the case in a venue that the law deems appropriate.'"[2] *Johns v. Newsmax Media, Inc.*, 887 F.Supp.2d 90, 96 (D.D.C. 2012) (quoting *Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 53 (D.D.C. 2006)). "If the Court concludes that venue is improper, it must then decide whether to dismiss the action or to transfer the case to a district where it could initially have been instituted." *King v. Caliber Home Loans, Inc.*, 210 F. Supp. 3d 130, 134 (D.D.C. 2016); *see also* 28 U.S.C. 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). The "standard remedy for improper venue is to transfer the case to the proper court rather than dismissing it—thus preserving a [plaintiff's] ability to obtain review," *Nat'l Wildlife Fed'n v. Browner*, 237 F.3d 670, 674 (D.C. Cir. 2001), but the "decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court," *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).

The parties now agree that Plaintiff's First Amendment claim against the individual defendants should be transferred, as a separate case, to the Eastern District of Virginia. As an

---

[2] Although this case has progressed far beyond the "lawsuit's outset," the individual defendants represent that they did not appear *in their personal capacities* until they filed the instant motion to dismiss and, indeed, had not previously authorized the U.S. Attorney's Office to represent them in their personal capacities. Dkt. 40 at 2. The Court, accordingly, concludes that they have not waived any objections to Plaintiff's choice of venue.

5

initial matter, the Court agrees that it lacks venue to adjudicate Plaintiff's personal-capacity claims against the individual defendants. Because none of the individual defendants resides in the District of Columbia, residential venue is unavailable in this district. 28 U.S.C. § 1391(b)(1); *see also* Dkt. 23 at 7–8. Moreover, because the relevant events occurred at the Petersburg FCC in Virginia, transactional venue is also unavailable in this district. 28 US.C. § 1391(b)(2); *see also* Dkt. 23 at 7–8; Dkt. 23-1 at 2 (Banks Decl. ¶¶ 3–6); Dkt. 40-1 at 2–3 (Harris Decl. ¶¶ 4–12). Finally, the fallback provision is inapplicable to Plaintiff's personal-capacity claims because the alleged conduct occurred in the Eastern District of Virginia, which has transactional venue over those claims. *See* 28 U.S.C. § 1391(b)(3) (fallback provision is unavailable if venue is proper in another district); *see also* Dkt. 11 at 12–13 (describing events occurring in Virginia).

The Court is also convinced that transfer of Plaintiff's personal-capacity claims is appropriate. As a general rule, cases transferred pursuant to 28 U.S.C. § 1406(a) to cure a defect in venue must be transferred in their entirety. *Cf. M.M.M. v. Sessions*, 319 F. Supp. 3d 290, 294 (D.D.C. 2018); Wright & Miller, Federal Practice and Procedure § 3846. But, where, as here, all claims in a single case cannot be transferred to a single transferee district, the Court has the authority to sever the claims pursuant to Rule 21 of the Federal Rules of Civil Procedure, so that one case may be transferred in its entirety pursuant to section 1406(a), while the remaining claim proceeds as a separate case. *See In re Vitamins Antitrust Litigation*, 270 F. Supp. 2d 14, 36–38 (D.D.C. 2003) (severing claims before transferring some pursuant to section 1406(a) and retaining others); *see also* Wright & Miller, Federal Practice and Procedure § 3827 ("If venue is proper for some defendants but improper for others, the district court has wide discretion. . . . [I]t may retain the case as to those defendants who have been properly sued there and sever and transfer the portion of the case for those defendants for whom venue is improper.").

District courts have broad discretion in determining whether severance of a claim is warranted, including the power to do so *sua sponte*. *See M.M.M.*, 319 F. Supp. 3d at 295 (citing *Spaeth v. Mich. State Univ. Coll. of Law*, 845 F. Supp. 2d 48, 55 (D.D.C. 2012)). In making this determination, the Court must consider multiple factors, including: (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present common questions of law or fact; (3) concerns related to judicial economy, multiplicity of litigation, and orderly and efficient resolution of disputes; (4) the availability of witnesses and other evidentiary proof; and (5) the potential for confusion, undue delay, or prejudice to any party. *See id.*; *see also Pinson v. U.S. Dep't of Justice*, 74 F. Supp. 3d 283, 289 (D.D.C. 2014) (noting that the key inquiry is "whether [severance] risks prejudicing a party or causing undue delay").

Here, the Court concludes that severing Plaintiff's FOIA claim against the BOP would materially advance the fair administration of justice.[3] As explained above, venue over Plaintiff's personal-capacity claims is not proper in the District of Columbia. As a result, absent severing Plaintiff's FOIA claim, the Court must either dismiss Plaintiff's claims against the individual defendants for improper venue or transfer the entire case to the Eastern District of Virginia pursuant to 28 U.S.C. 1404(a), which authorizes transfer "for the convenience of parties . . . , in the interest of justice." *Id.* Neither option would result in the just and expeditious resolution of Plaintiff's claims. Given that Plaintiff's FOIA claim does not arise out of the same transaction or occurrence as his First Amendment retaliation claim; that the two claims do not share any common questions of law or fact; that most of the witnesses and all of the records related to Plaintiff's First Amendment claim are located at the Petersburg FCC, *see* Dkt. 40-1 at 2 (Harris Decl. ¶¶ 4–7); and that the parties are in the midst of addressing Plaintiff's FOIA claim, with a

---

[3] Venue over Plaintiff's FOIA claim is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B).

joint status report due to the Court on January 11, 2019, *see* Minute Entry (Dec. 11, 2018), the Court concludes that it is more expeditious for the Court to retain jurisdiction over Plaintiff's FOIA claim and for the U.S. District Court for the Eastern District of Virginia to adjudicate Plaintiff's claims against the individual defendants. Severance would benefit judicial economy and avoid unnecessarily delaying Plaintiff's efforts to obtain his BOP records.

Finally, the Court is convinced that Plaintiff's personal-capacity claims, which allege that the individual defendants retaliated against him for exercising his First Amendment rights, can and should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. 1406(a). Those claims *can* be transferred because the alleged retaliation took place at the Petersburg FCC, in the Eastern District of Virginia; as such, this case could have, and indeed, should have, been brought there. *See* 28 U.S.C. § 1391(b)(2) ("A civil action may be brought in . . . a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ."); Va. Code § 8.01-328.1 ("Virginia Long-Arm Statute") (providing that "[a] court may exercise personal jurisdiction over a person . . . as to a cause of action arising from the person's . . . [c]ausing tortious injury by an act or omission in this Commonwealth."). And, Plaintiff's personal-capacity claims *should* be transferred because, where venue is improper, there is a presumption in favor of transferring the case to cure the defect. *See Nat'l Wildlife Fed'n*, 237 F.3d at 674. Here, the Court has no difficulty concluding that it is in the interest of justice to transfer the case to the Eastern District of Virginia, instead of dismissing it— particularly in light of the fact that both parties have agreed to the transfer. *See* Dec. 11, 2018 Hrg. Tr. (Rough at 5, 7). Transferring the case, moreover, would be "more efficient and economical" because it would avoid forcing Plaintiff, who is proceeding *pro se*, from re-filing and re-serving his complaint in another district. *See King*, 210 F. Supp. 3d at 137 (concluding

8

that transfer was in the interest of justice when "there would be no prejudice to either party" and when it would bolster "efficien[cy] and econom[y]" of the courts). Accordingly, the Court concludes that transfer is appropriate under these circumstances.

## CONCLUSION

For the foregoing reasons, the Court will *sua sponte* **SEVER** Plaintiff's FOIA claim against the BOP. The Court will **GRANT** Defendants' motion to transfer venue with respect to Plaintiff's claims against the individual defendants, Dkt. 23, and will retain jurisdiction over Plaintiff's FOIA claim as a separate action.

A separate order will issue.

    /s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date: January 9, 2019